BILAL A. ESSAYLI
United States Attorney
DAVID M. HARRIS
Assistant United States Attorney
Chief, Civil Division
JOANNE S. OSINOFF
Assistant United States Attorney
Chief, Complex and Defensive Litigation Section
PAUL (BART) GREEN (Cal. Bar No. 300847)
ALEXANDER L. FARRELL (Cal. Bar No. 335008)
Assistant United States Attorneys
        Federal Building, Suite 7516
        300 North Los Angeles Street
        Los Angeles, California 90012
        Telephone: (213) 894-0805 / -5557
        Email:  Paul.Green@usdoj.gov
                Alexander.Farrell@usdoj.gov

Attorneys for Defendants

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| STUDENT DOE #1,<br><br>      Plaintiff,<br><br>      v.<br><br>KRISTI NOEM, in her official capacity as Secretary of Homeland Security; *et al.*,<br><br>      Defendants. | No. 5:25-cv-00847-SSS-SHK<br><br>**DEFENDANT'S OPPOSITION TO STUDENT DOE #1'S EX PARTE APPLICATION FOR TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE RE: PRELIMINARY INJUNCTION**<br><br>Honorable Sunshine S. Sykes<br>United States District Judge |

1

# **TABLE OF CONTENTS**

2

DESCRIPTION                                                                                    PAGE

3

4

TABLE OF AUTHORITIES ...............................................................................ii

5

I.    INTRODUCTION AND SUMMARY .................................................... 1

6

II.   PLAINTIFF'S COMPLAINT AND DECLARATION ........................... 3

7

III.  PROCEDURAL HISTORY ................................................................... 3

8

IV.   ARGUMENT.......................................................................................... 4

9

      A.    Plaintiff Fails to Establish Entitlement to Extraordinary *Ex Parte* Relief ............................................................................................ 4

10

11

      B.    Plaintiff's *Ex Parte* Application Fails to Establish Entitlement to Their Requested TRO Relief........................................................... 5

12

            1.    Plaintiff Has Not Established a Likelihood of Success on the Merits ................................................................................ 6

13

14

            2.    No Irreparable Injury to the Plaintiff ................................. 11

15

            3.    Public Interest Factors Weigh in Favor of the Government ............ 13

16

      C.    The Broad Variety of Relief that Plaintiff Seeks by *Ex Parte* TRO Application Is Extremely Excessive, Unjustified, and Far Exceeds the Relief Requested or Obtainable by Plaintiff's Actual Complaint.............. 13

17

18

      D.    Plaintiff Has Not Satisfied Their Burden to Proceed Anonymously ......... 16

19

      E.    A Bond Is Required Under Fed. R. Civ. P. 65(c) ...................... 20

20

V.    CONCLUSION.................................................................................... 20

21

22

23

24

25

26

27

28

i

# TABLE OF AUTHORITIES

<u>DESCRIPTION</u>                                                                                                    <u>PAGE</u>

**Cases**

*Am. Trucking Ass'ns v. City of Los Angeles*,
   559 F.3d 1046 (9th Cir. 2009) ............................................................... 11

*Bakhtiari v. Beyer*,
   2008 WL 3200820 (E.D. Mo. Aug. 6, 2008) ........................................ 10

*Barouch v. United States DOJ*,
   962 F. Supp. 2d 30 (D.D.C. 2013) ........................................................ 10

*Bennett v. Spear*,
   520 U.S. 154 (1997) ................................................................................. 7

*Blackie's House of Beef, Inc. v. Castillo*,
   659 F.2d 1211 (D.C. Cir. 1981) ............................................................ 13

*Brewster v. Bd. of Educ. of the Lynwood Unified Sch. Dist.*,
   149 F.3d 971 (9th Cir. 1998) ................................................................. 10

*Calderon Salinas v. U.S. Atty. Gen.*,
   140 F. App'x 868 (11th Cir. 2005) ........................................................ 11

*Doe 1 v. U.S. Dep't of Homeland Sec.*,
   2020 WL 6826200 (C.D. Cal. Nov. 20, 2020) ...................................... 10

*Doe v. Kamehameha Sch./Bernice Pauahi Bishop Est.*,
   596 F.3d 1036 (9th Cir. 2010) .................................................. 17, 18, 19

*Doe v. Pasadena Unified Sch. Dist.*,
   2018 WL 6137586 (C.D. Cal. Feb. 20, 2018) ...................................... 17

*Doe v. Snyder*,
   28 F.4th 103 (9th Cir. 2022) .................................................................... 6

*Durrani v. U.S. Citizenship & Immigr. Servs.*,
   596 F. Supp. 2d 24 (D.D.C. 2009) .......................................................... 9

*El Rescate Legal Servs., Inc. v. Exec. Office of Immigr. Review*,
   959 F.2d 742 (9th Cir. 1992) ................................................................. 13

*FDIC v. Meyer*,
   510 U.S. 471 (1994) ................................................................................. 9

*Gannett Co. v. DePasquale*,
   443 U.S. 368 (1979) .............................................................................. 17

*Garcia v. Google, Inc.*,
   786 F.3d 733 (9th Cir. 2015) ................................................................... 6

*Hill v. Air Force*,
   795 F.2d 1067 (D.C. Cir. 1986) ............................................................ 10

ii

*Jie Fang v. Dir. U.S. Immigr. & Customs Enf't*,
    935 F.3d 172 (3d Cir. 2019) ........................................................ 9

*Kamakana v. City of Honolulu*,
    447 F.3d 1172 (9th Cir. 2006) .................................................. 17

*Kroger Co. v. Reg'l Airport Auth. of Louisville & Jefferson Cnty.*,
    286 F.3d 382 (6th Cir. 2002) ...................................................... 8

*League of Cal. Cities v. Fed. Commc'ns Comm'n*,
    118 F.4th 995 (9th Cir. 2024) ...................................................... 8

*Loughghalam v. Trump*,
    230 F. Supp. 3d 26 (D. Mass. 2017) ...................................... 11

*Lydo Enters., Inc. v. City of Las Vegas*,
    745 F.2d 1211 (9th Cir. 1984) .................................................. 12

*Marlyn Nutraceuticals v. Mucos Pharma GmbH & Co.*,
    571 F.3d 873 (9th Cir. 2009) .................................................... 14

*Mission Power Eng'g Co. v. Cont'l Cas. Co.*,
    883 F. Supp. 488 (C.D. Cal. 1995) ............................................ 4

*Munaf v. Geren*,
    553 U.S. 674 (2008) .................................................................... 6

*Nken v. Holder*,
    556 U.S. 418 (2009) ........................................................ 6, 11, 13

*Nunez v. City of Los Angeles*,
    147 F.3d 867 (9th Cir. 1998) .................................................... 10

*Raven v. Panama Canal Co.*,
    583 F.2d 169 (5th Cir. 1978) ................................................. 9-10

*Rosen v. NLRB*,
    1983 WL 21389 (D.D.C. Jan. 27, 1983) ................................... 11

*Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*,
    240 F.3d 832 (9th Cir. 2001) ...................................................... 6

*United Aero. Corp. v. U.S. Air Force*,
    80 F.4th 1017 (9th Cir. 2023) ..................................................... 9

*Univ. of Tex. v. Camenisch*,
    451 U.S. 390 (1981) .................................................................. 14

*Winter v. Nat. Res. Def. Council, Inc.*,
    555 U.S. 7 (2008) ............................................................. *passim*

*XXIII v. Advanced Textile Corp.*,
    214 F.3d 1058 (9th Cir. 2000) .................................................. 17

*Yunsong Zhao v. Virginia Polytechnic Inst. & State Univ.*,
    2018 WL 5018487 (W.D. Va. Oct. 16, 2018) .......................... 10

iii

**Statutes**

5 U.S.C. § 552a ................................................................................. 10, 9

5 U.S.C. § 704 ..................................................................................... 6, 9

5 U.S.C. § 706 ........................................................................................ 7

8 U.S.C. § 1201 ...................................................................................... 9

8 U.S.C. § 1229 ................................................................................ 7, 13

8 U.S.C. § 1252 ................................................................................ 7, 13

**Other**

8 C.F.R. § 214.1 ................................................................................ 8, 9

8 C.F.R. § 214.2 ..................................................................................... 9

8 C.F.R. § 1003.1 ............................................................................. 7, 13

Fed. R. Civ. P. 5.2 ......................................................................... 16, 20

Fed. R. Civ. P. 10 ................................................................................ 17

Fed. R. Civ. P. 65 ................................................................................ 20

Local Rule 5.2-1 .................................................................................. 20

## I.    INTRODUCTION AND SUMMARY

Plaintiff—an unidentified international college student who was arrested and convicted for reckless driving[1]—complains that their information within a federal government database of international students at U.S. colleges and universities was arbitrarily terminated. Through their *ex parte* application, Plaintiff asks this Court for an emergency order to reinstate their record in that database, the Student Exchange Visitor Information System ("SEVIS"). Plaintiff's *ex parte* application also asks the Court to issue a broad variety of anomalous additional relief, however, including (1) enjoining Defendants from arresting or detaining Plaintiff on any grounds, essentially immunizing him from any immigration law enforcement; (2) authorizing Plaintiff to proceed anonymously in this lawsuit; and (3) to prevent disclosure of Plaintiff's identifying information to the Defendant federal agencies that Plaintiff is suing. *See* Dkt. 17 ("App."). The wide-ranging, extraordinary relief that Plaintiff seeks by *ex parte* application is improper and unsupported by the evidence and the law.[2]

As for the likelihood of success on the merits prong of a TRO application, Plaintiff has not submitted evidence sufficient to show a likelihood that the termination of their SEVIS record was arbitrary or capricious. Plaintiff has not described any of the details of their arrest and conviction. Instead, by proceeding under strict anonymity, they both prevent any of that evidence from being brought into the record and impair the Defendants' ability to defend against their *ex parte* application on that key point. Furthermore, Plaintiff affirmatively alleges that "Plaintiff is unaware of the factual basis for the termination of their SEVIS status." Compl., ¶ 31. As submitted by their *ex parte* application, essentially no actual evidence is presented on the merits of Plaintiff's claim

---

[1] *See* Dkt. 21-2 ("Tolchin Decl."), Ex. A, Student Doe #3 Decl. ¶ 4. Defendants have not been able to confirm the details of Plaintiff's criminal issues because Plaintiff's counsel has not disclosed the name of Plaintiff.

[2] Plaintiff concedes they are not challenging the revocation of their visa, which renders them subject to removal proceedings irrespective of their SEVIS status. Specifically, "Plaintiff does not challenge the revocation of their visa in this action." Compl., ¶ 6.

that the Defendants acted arbitrarily and capriciously. That is not enough to carry their burden for obtaining injunctive relief on an *ex parte* basis. As for the irreparable harm prong, Plaintiff likewise submits no evidence sufficient to support the incredibly wide-ranging relief their application seeks. Plaintiff does not submit any evidence that their college has stopped them, or has threatened to stop them, from attending class.

Furthermore, while at least one Court in this District has recently issued a TRO restoring the SEVIS record of a current student, that TRO order was far narrower than the sensationally overbroad relief the anonymous Plaintiff seeks here. *Cf. Zhou v. Lyons*, No. 2:25-cv-02994-CV-SK, Apr. 15, 2025 order (found at Tolchin Decl., Ex. C, Page ID #:211). Insofar as Plaintiff's lawsuit does not contest the revocation of their visa, but simultaneously asks this Court to enjoin the government from arresting or detaining them, Plaintiff improperly seeks relief they could not obtain even if they ultimately prevailed on the merits of their claims (and which is also jurisdictionally barred). If removal proceedings are initiated and a notice to appear in Immigration Court is issued, for example, Plaintiff can then defend themself on the merits like anybody else.

As their ostensible basis for extraordinary injunctive relief, Plaintiff cites only to non-applicable cases in which aliens have been arrested and detained under Section 237(a)(4)(c) of the Immigration and Nationality Act—which authorizes the Secretary of State to determine that an individual is "deportable" if they have "reasonable grounds" to believe the individual would adversely affect U.S. foreign policy. Plaintiff's Application, however, identifies no such foreign policy issues here, nor any political speech. Nor has Plaintiff sued the Department of State or its Secretary as defendants in this lawsuit.

Plaintiff also asks the Court to issue an order authorizing Plaintiff to proceed under a pseudonym in this action. But the Defendants' interest in being able to fully defend against their anonymous accuser's allegations, and the public's interest in access to details of litigation, both outweigh Plaintiff's desire to proceed in total anonymity. Indeed, while this specific Plaintiff seeks to proceed anonymously, they are a marked anomaly in that regard. Myriad other SEVIS record cases are currently being litigated

2

around the country, naming hundreds of plaintiffs. *This* Plaintiff fails to prove there is any credible threat of retaliation from filing such cases. Plaintiff falls far short of carrying their burden to establish the need for such extraordinary and prejudicial relief.

Accordingly, Plaintiff's *ex parte* application should be denied.

## II.    PLAINTIFF'S COMPLAINT AND DECLARATION

Plaintiff's declaration states that they are an international student located in the United States pursuant to an F-1 visa. *See* Dkt. 21-2, Ex. A, Declaration of Student Doe #1 ("Doe Decl.") ¶ 1. Plaintiff states that they attend college at an unspecified university in the Inland Empire. Doe Decl. ¶ 3. Plaintiff does not identify their expected date of graduation.

Plaintiff states that their school notified them on April 1, 2025 that their SEVIS record was terminated. Doe Decl. ¶ 7. Plaintiff alleges that they were not given prior notice or an opportunity to respond to the SEVIS termination notice. *Id.*

Plaintiff states that they have a criminal history related to an "arrest and misdemeanor conviction for reckless driving" at an unspecified time and location. *See* Doe Decl. ¶ 4. They also allege that they have "not engaged in political activity." Doe Decl. ¶ 6.

In opposing Plaintiff's *ex parte* application, Defendants are not able to address the veracity of these allegations and averments or identify additional information bearing on the merits of Plaintiff's claims because Plaintiff has refused to provide any of their own identifying information, impairing the Defendants' ability to respond.

## III.    PROCEDURAL HISTORY

On April 5, 2025, Plaintiff filed their Complaint, which asserts APA claims and a Fifth Amendment procedural due process claim challenging the termination of Plaintiff's SEVIS record. Compl. ¶¶ 37-52. As relief, Plaintiff's Complaint requests that the Court issue declaratory and injunctive relief declaring that the termination of their SEVIS record was unlawful, vacating ICE's termination of the "SEVIS status," and ordering Defendants to restore the "SEVIS record and status." Compl., *Prayer for Relief.*

Notably, unlike Plaintiff's radically overbroad *ex parte* application, the Complaint itself does not seek to enjoin the Defendants from taking any enforcement action arising out of Plaintiff's criminal history or SEVIS status, nor does it allege facts that would substantiate such extraordinary relief. *See id*. The Complaint similarly does not challenge the revocation of Plaintiff's visa. *See id*., ¶ 6. On April 22, 2025, Plaintiff filed their instant *ex parte* application for a TRO.

## IV.    ARGUMENT

### A.    Plaintiff Fails to Establish Entitlement to Extraordinary *Ex Parte* Relief

When a party applies for the extraordinary remedy of *ex parte* relief, it must demonstrate it "is without fault in creating the crisis that requires ex parte relief, or that the crisis occurred as a result of excusable neglect." *See Mission Power Eng'g Co. v. Cont'l Cas. Co.*, 883 F. Supp. 488, 492 (C.D. Cal. 1995).

**First,** Plaintiff fails to satisfy (or even address) the *Mission Power* standard for seeking emergency relief by *ex parte* application, as opposed to proceeding by a noticed motion (as Plaintiff initially did in this action). To the extent there were any crisis here, Plaintiff is at fault in creating the crisis that supposedly requires *ex parte* relief. *See Mission Power,* 883 F. Supp. at 492-93.

On April 14, 2025, Plaintiff filed a motion that sought the same relief Plaintiff now seeks on an *ex parte* basis. Dkt. 11. That motion was stricken. Dkt. 19. On April 21, Plaintiff filed their *Ex Parte* Application, more than fourteen days since they first raised this issue with the U.S. Attorney's Office. Dkt. 21.

Plaintiff's belated strategic choice to seek a TRO via *ex parte* application is the exact opposite of a crisis, not of their own making, that justifies radically exigent relief. The Federal Rules of Civil Procedure and Local Rules "contemplate that regular noticed motions are most likely to produce a just result." *Mission Power*, 883 F. Supp. at 491. There is no emergency for the requested relief here.

**Second,** Plaintiff has not shown good cause. Plaintiff argues that TROs have been recently granted by courts in other SEVIS cases. The Declaration of Stacy Tolchin

4

asserts that "Attached as **Exhibit D** are thirteen (13) district court orders, listed below, from the past week and a half granting temporary restraining orders in challenges substantially identical to Plaintiff's challenge in this matter." Tolchin Decl. ¶ 7 [Dkt. 21-2, at p. 2]. Yet Plaintiff neither explains nor establishes why their own alleged facts are "substantially identical." To the contrary, as discussed above, there are multiple significant differences with Plaintiff's case, starting with the anomalous fact that—in stark contrast to the *non-anonymous* cases that Plaintiff cites—the Defendants here have no opportunity to rebut the Plaintiff's assertions because Plaintiff's identity is unknown.

While some district courts have issued orders granting a TRO relating to the termination of SEVIS records, as Plaintiff attaches to the Tolchin Declaration, such court appears to have addressed the actual facts and evidence of the case, rather than relying on the type of facile legal generalizations Plaintiff seeks to substitute here.

Furthermore, contrary to what Plaintiff argues, other district courts have *denied* TROs sought in other SEVIS reinstatement cases. *See* Farrell Decl. Ex. 1 (Order Denying TRO in *Deore, et al. v. Sec'y of U.S. Dep't of Homeland Sec., et al.*, 2:25-cv-11038-SJM-DRG, Dkt. 20 (E.D. Mich. Apr. 17, 2025)). As the court in *Deore* found, SEVIS reinstatement cases are fact-intensive and fact-determinative, which requires the development of the evidentiary record.

No district court appears to have issued *ex parte* TRO relief simply because an anonymous plaintiff demands it based on untestable assertions, as Plaintiff here requests.

**Third,** Plaintiff has not shown any prejudice they would suffer from proceeding with a normal 28-day noticed motion for a preliminary injunction. Indeed, while Plaintiff vaguely alludes to a potential future arrest and detention if they have no visa, Plaintiff's Complaint disavows challenging the revocation of their visa. *See* Compl., ¶ 6.

In sum, the Application fails to establish that Plaintiff is entitled to *ex parte* relief.

**B.    Plaintiff's *Ex Parte* Application Fails to Establish Entitlement to Their Requested TRO Relief**

The standard for issuing a TRO is substantially identical to the standard for

5

issuing a preliminary injunction. *See Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001). A "preliminary injunction is an extraordinary and drastic remedy." *Munaf v. Geren*, 553 U.S. 674, 689-90 (2008). A district court should enter a preliminary injunction only "upon a clear showing that the [movant] is entitled to such relief." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008). To obtain a preliminary injunction, the moving party must demonstrate (1) that it is likely to succeed on the merits of its claims; (2) that it is likely to suffer an irreparable injury in the absence of injunctive relief; (3) that the balance of equities tips in its favor; and (4) that the proposed injunction is in the public interest. *Id.* at 20. These factors are mandatory. As the Supreme Court has articulated, "[a] stay is not a matter of right, even if irreparable injury might otherwise result" but is instead an exercise of judicial discretion that depends on the facts. *Nken v. Holder*, 556 U.S. 418, 433 (2009) (citation omitted).

Because Plaintiff seeks a mandatory injunction here, the already high standard for granting a TRO is "doubly demanding." *Garcia v. Google, Inc.* 786 F.3d 733, 740 (9th Cir. 2015). Thus, Plaintiff must establish that the law and facts *clearly favor* their position, not simply that he is likely to succeed. *Id.* Further, a mandatory preliminary injunction will not issue unless extreme or very serious damage will otherwise result. *See Doe v. Snyder*, 28 F.4th 103, 114 (9th Cir. 2022).

    1. <u>Plaintiff Has Not Established a Likelihood of Success on the Merits</u>

Plaintiff seeks relief under the Administrative Procedure Act (APA) and the due process clause of the U.S. Constitution. Plaintiff is unlikely to succeed on either theory.

    (a) Plaintiff's APA Claim is Defective

Plaintiff's *ex parte* application fails to demonstrate a likelihood of success on the merits on their APA claim because Plaintiff does not challenge final agency action, the agency action that they challenge was not arbitrary or capricious, and another remedy exists under the Privacy Act.

**<u>No final agency action.</u>** Plaintiff fails to challenge final agency action, which is required for an APA claim seeking judicial review. *See* 5 U.S.C. § 704. Agency action is

final for purposes of APA review only if (1) it marks "the consummation of the agency's decision-making process" and (2) is "one by which rights or obligations have been determined, or from which legal consequences flow." *Bennett v. Spear*, 520 U.S. 154, 177-78 (1997) (citations omitted).

Here, the termination of an individual's SEVIS record cannot reasonably be viewed as a "consummation" of agency decision making. Plaintiff has administrative remedies available to inquire about the termination of Plaintiff's SEVIS record and if necessary, seek correction. But Plaintiff has chosen not to avail themself of those remedies. Indeed, as DHS explains on its website, there are administrative processes available after SEVIS termination, including options to pursue correction, reinstatement, or to depart and obtain a new SEVIS record.[3]

With respect to Plaintiff being potentially subject to future removal proceedings, *a fortiori* there is no final agency action to review here. If Plaintiff were to be placed into immigration proceedings via a Notice to Appear, that will provide them with a notice of any allegations of deportability against Plaintiff and provide an opportunity to contest them before an Immigration Judge. 8 U.S.C. §§ 1229(a)(1); 1229a. After that, Plaintiff would have an opportunity to administratively appeal the Immigration Judge's decision to the Board of Immigration Appeals, *see* 8 C.F.R. § 1003.1(b), and then ultimately get judicial review with the Ninth Circuit. 8 U.S.C. § 1252(a)(1). No such theoretical proceedings are before the Court, nor would there be jurisdiction over them.

**Not arbitrary or capricious.** For agency action that is final and reviewable under the APA, a court may set aside agency action that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706. "Under the arbitrary or capricious standard, the party challenging the agency's action must show that the action had no rational basis or that it involved a clear and prejudicial violation of

---

[3] DHS website, Study in the States, available at: https://studyinthestates.dhs.gov/sevis-help-hub/student-records/certificates-of-eligibility/reinstatement-coe-form-i-20 (last accessed on Apr. 23, 2025).

applicable statutes or regulations." *Kroger Co. v. Reg'l Airport Auth. of Louisville & Jefferson Cnty.*, 286 F.3d 382, 389 (6th Cir. 2002) (quotations omitted). "The arbitrary or capricious standard is the least demanding review of an administrative action." *Id.*

Here, Plaintiff fails to carry his burden to establish that DHS's action of terminating Plaintiff's SEVIS record was arbitrary or capricious. To the contrary, Plaintiff affirmatively contends that he does not know why his SEVIS record was terminated. "Plaintiff is unaware of the factual basis for the termination of their SEVIS status." Compl., ¶ 31. SEVIS records may be terminated for numerous different reasons by DHS or by a university. *See* DHS website, SEVIS Terminations.[4] A criminal history, which Plaintiff acknowledges they have, is one valid reason for terminating a SEVIS record. *See id.* It is not known how severe Plaintiff's criminal record is here, unfortunately, because Plaintiff insists by an anonymous declaration that they committed some sort of minor offense. That self-serving assertion falls far short of carrying their burden of affirmatively demonstrating that the agency *made a decision based on a specific record before the agency that was arbitrary and capricious*. APA claims are not decided based on a Plaintiff's own self-serving narrative about what happened and what the agency should instead have decided. They are decided based on what the agency decided. Plaintiff fails to establish a likelihood of success on that.

Plaintiff's argument that 8 C.F.R. § 214.1(d) limits DHS's ability to update SEVIS is contrary to the language of the regulation and unsupported by reliable authority. The plain text of a regulation controls its application. *See League of Cal. Cities v. Fed. Commc'ns Comm'n*, 118 F.4th 995, 1015 (9th Cir. 2024). Section 214.1(d) lists three events that "shall" terminate an individual's nonimmigrant status. *See* 8 C.F.R. § 214.1(d). The text does not here implicitly or explicitly refer to the SEVIS system; it addresses underlying status. But even if it did, and even if Plaintiff's lawful nonimmigrant status were at issue in this case, nothing in the text of the regulation

---

[4] https://www.ice.gov/factsheets/f-and-m-student-record-termination-reasons-sevis (last accessed on Apr. 23, 2025).

8

indicates that those mandatory events are the *only* reasons to terminate a nonimmigrant's status. *See id.* Instead, the regulation provides specific reasons requiring the termination of nonimmigrant status in addition to reasons provided elsewhere in the U.S. Code and the Code of Federal Regulations. *See, e.g.*, 8 U.S.C. § 1201(i); 8 C.F.R. § 214.2(f). Accordingly, Plaintiff's argument that the grounds enumerated in § 214.1(d) are the *only* grounds for terminating a SEVIS record is inconsistent with the text of the regulation.

Second, the authority Plaintiff cites for their interpretation of § 214.1(d) does not support their argument. Plaintiff's only support is footnote 100 in *Jie Fang. See Jie Fang v. Dir. U.S. Immigr. & Customs Enf't*, 935 F.3d 172, at 185 n.100 (3d Cir. 2019). In that footnote, the Third Circuit mused about whether § 214.1(d) limited DHS's ability to terminate F-1 nonimmigrant status. *See id.* (stating only that it "appears" so). However, the court qualified its footnote statement because the issue was not before it on appeal. Accordingly, this footnote dicta should be disregarded.

**The Privacy Act Also Bars APA Review.** "Absent a waiver, sovereign immunity shields the Federal Government and its agencies from suit." *FDIC v. Meyer*, 510 U.S. 471, 475 (1994). The APA does provide independent subject matter jurisdiction. "§ 702 of the APA does not provide 'an independent basis for subject matter jurisdiction'— whether the federal courts are empowered to hear the type of claims that the plaintiff asserts." *United Aero. Corp. v. U.S. Air Force*, 80 F.4th 1017, 1028 (9th Cir. 2023).

Plaintiff's APA claims in this lawsuit are barred to the extent they attempt to assert analogues of claims that Congress has delimited in the Privacy Act. The Privacy Act allows individuals to challenge data contained in a government system of records in federal court and establishes a comprehensive scheme for such claims. *See* 5 U.S.C. § 552a(g)(1). However, that statute prohibits most noncitizens from filing suit challenging records under the Privacy Act. *See* 5 U.S.C. §§ 552a(a)(2). As such, the United States has not waived sovereign immunity for Plaintiff to file an APA claim on this subject. *See* 5 U.S.C. § 552a(a)(2); 5 U.S.C. § 704(a)(1); *Durrani v. U.S. Citizenship & Immigr. Servs.*, 596 F. Supp. 2d 24, 28 (D.D.C. 2009); *Raven v. Panama Canal Co.*, 583 F.2d

9

169, 171 (5th Cir. 1978) ("[I]t would be error for this Court to allow plaintiff, a Panamanian citizen, to assert a claim under the Privacy Act.").[5] Plaintiff cannot obtain relief through an APA claim that they could not obtain through the Privacy Act, making an end-run around is limitations.

### (b) Plaintiff's Due Process Claim Is Defective

Plaintiff also asserts a claim for violation of the Due Process Clause of the Fifth Amendment. *See* Compl., ¶¶ 44-47. Substantive due process "forbids the government from depriving a person of life, liberty, or property in such a way that shocks the conscience' or interferes with the rights implicit in the concept of ordered liberty.'" *Nunez v. City of Los Angeles*, 147 F.3d 867, 871 (9th Cir. 1998). A procedural due process claim has two elements: deprivation of a constitutionally protected liberty or property interest and denial of adequate procedural protection. *Brewster v. Bd. of Educ. of the Lynwood Unified Sch. Dist.*, 149 F.3d 971, 982 (9th Cir. 1998).

Plaintiff does not have a constitutionally protected entitlement in their SEVIS record that could give rise to a due process claim, as several courts have ruled. *See Yunsong Zhao v. Virginia Polytechnic Inst. & State Univ.*, 2018 WL 5018487, at *6 (W.D. Va. Oct. 16, 2018) (denying preliminary injunction and finding that plaintiff had no due process right to or property interest in his SEVIS status and that a change to his SEVIS status did not engender due process protections); *Bakhtiari v. Beyer*, 2008 WL 3200820, at *3 (E.D. Mo. Aug. 6, 2008) (holding that SEVIS regulations and their enabling legislation do not indicate a congressional intent to confer a benefit on nonimmigrant students); *Doe 1 v. U.S. Dep't of Homeland Sec.*, 2020 WL 6826200, at *4 n.3 (C.D. Cal. Nov. 20, 2020), aff'd sub nom. *Does 1 through 16 v. U.S. DHS*, 843 F.

---

[5] Even if Plaintiff could assert a Privacy Act claim, it would be foreclosed because Plaintiff has not exhausted the mandatory administrative remedies as required by statute before requesting an amendment to records under §§ 552a(2)-(3). *See* 5 U.S.C. § 552a(d)(3); *Hill v. Air Force,* 795 F.2d 1067, 1069 (D.C. Cir. 1986) (plaintiff seeking to amend inaccurate records must first exhaust); *Barouch v. United States DOJ*, 962 F. Supp. 2d 30, 67 (D.D.C. 2013) (exhaustion requirement of Privacy Act is jurisdictional).

App'x 849 (9th Cir. 2021) (a property interest in SEVIS status is "unlikely" to exist). Similarly, "[t]here is no constitutionally protected interest in either obtaining or continuing to possess a visa." *See also Louhghalam v. Trump*, 230 F. Supp. 3d 26, 35 (D. Mass. 2017) (collecting cases).

Plaintiff also argues their due process rights were violated because Plaintiff should have been given notice and an opportunity to be heard before DHS terminated Plaintiff in the SEVIS database. Even if Plaintiff were entitled to due process as to the SEVIS record, Plaintiff could obtain it through the administrative process that Plaintiff has chosen not to pursue, or through removal proceedings if they were to occur. *See, e.g., Calderon Salinas v. U.S. Atty. Gen.*, 140 F. App'x 868, 870 (11th Cir. 2005) (indicating that aliens were provided due process in removal proceedings because "[t]hey were given notice and opportunity to be heard in their removal proceedings[.]"). Plaintiff is not entitled to the due process of his choice. *See, e.g., Rosen v. NLRB*, 1983 WL 21389, at *3 (D.D.C. Jan. 27, 1983) ("Plaintiffs are not entitled to the process they would prefer."). Accordingly, Plaintiff does not have an actionable due process claim.

## 2. No Irreparable Injury to the Plaintiff

Plaintiff fails to carry their burden of submitting evidence sufficient to show they will suffer irreparable harm if their requested relief is not granted. To satisfy this factor, Plaintiff must demonstrate "a particularized, irreparable harm beyond mere removal." *Nken v. Holder*, 556 U.S. 418, 438 (2009) (Kennedy, J., concurring). Notably, a "possibility" of irreparable harm is insufficient; irreparable harm must be likely absent an injunction. *Am. Trucking Ass'ns v. City of Los Angeles*, 559 F.3d 1046, 1052 (9th Cir. 2009); *see also Winter*, 555 U.S. at 22 ("a possibility of irreparable harm" does not justify a preliminary injunction).

Here, Plaintiff does not submit any evidence that their college has stopped them, or has threatened to stop them, from attending class. Doe Decl. ¶¶ 7-13. Plaintiff also claims that they are not able to transfer to a summer "program" at a new school, but provides no details about what that program is or if it is even related to obtaining a

1    degree. Doe Decl. ¶ 13.

2         Plaintiff also argues that their SEVIS termination puts them in "financial []

3    jeopardy." Doe Decl. ¶ 13. But "[p]urely monetary injuries are not normally considered

4    irreparable." *Lydo Enters., Inc. v. City of Las Vegas*, 745 F.2d 1211, 1213 (9th Cir.

5    1984). Likewise, Plaintiff's assertion that he is "deeply concerned" about retaliation and

6    that Plaintiff is "apprehensive" about their "circumstances" upon reading news articles

7    about named individuals charged with foreign policy issues by the State Department

8    does not establish irreparable harm to Plaintiff  in a completely different type of case.

9    Doe Decl. ¶¶ 10-12. *See Winter*, 555 U.S. at 22 ("a possibility of irreparable harm" does

10   not justify a preliminary injunction). To the contrary, the other plaintiffs in many other

11   SEVIS cases proceeding around the country are not anonymous. Plaintiff submits no

12   evidence that any of them have been retaliated against.

13        Finally, as for Plaintiff's extraordinary and improper request for the Court to grant

14   him broad immunity from immigration detention or arrest—relief that even Plaintiff's

15   Complaint does not request—Plaintiff (1) does not establish that they will be detained in

16   the absence of injunctive relief; (2) does not establish that such detention would be

17   unlawful (to the contrary, Plaintiff does not contest the revocation of their visa); (3) does

18   not establish how the Court would have jurisdiction over such removal proceedings; and

19   (4) does not establish that such speculative future proceedings would inflict irreparable

20   harm on them. Indeed, Plaintiff acknowledges the risk is unlikely, stating, "[i]t has been

21   weeks since Plaintiff's SEVIS record was terminated and, absent any information that it

22   is Plaintiff who has filed this lawsuit, the government has made no indication that it

23   independently wants to take Plaintiff into custody." App. at 11.

24        Plaintiff argues that "Plaintiff has never experienced detention before and the

25   prospect of detention as a response to Plaintiff's participation in this suit is deeply

26   frightening." App. at 20. This is argument, rather than evidence, but even if Plaintiff

27   were at some point detained as a removable alien, that is not inherently irreparable harm.

28   If Plaintiff were to be placed into immigration proceedings via a Notice to Appear, that

will provide them with a notice of any allegations of deportability against them and provide an opportunity to contest them before an Immigration Judge. 8 U.S.C. §§ 1229(a)(1); 1229a. After that, Plaintiff could administratively appeal the IJ's decision to the BIA, *see* 8 C.F.R. § 1003.1(b), and then ultimately get judicial review through a petition for review directly with the Ninth Circuit. 8 U.S.C. § 1252(a)(1).

In sum, Plaintiff's speculative allegations of irreparable harm, without more, fall far short of establishing, with admissible evidence submitted via their moving papers, the required likelihood of irreparable future harm. *See, e.g., Winter*, 555 U.S. at 22.

### 3. Public Interest Factors Weigh in Favor of the Government

The public interest factor does not weigh in Plaintiff's favor. Even where the government is the opposing party, courts "cannot simply assume that ordinarily, the balance of hardships will weigh heavily in the applicant's favor." *Nken*, 556 U.S. at 436 (citation and internal quotation marks omitted).

Insofar as Plaintiff seeks a broad variety of disparate relief by their TRO, there are different levels of public interest factor involved for those requests. Restoration of the SEVIS record has been ordered as TRO relief in some cases, as discussed above, which is a more limited impairment of the public interest. By contrast, Plaintiff's request to be granted far-reaching immunity from any immigration enforcement would be a significant public harm, in addition to being contrary to law. "Control over immigration is a sovereign prerogative." *El Rescate Legal Servs., Inc. v. Exec. Office of Immigr. Review*, 959 F.2d 742, 750 (9th Cir. 1992); *Blackie's House of Beef, Inc. v. Castillo*, 659 F.2d 1211, 1221 (D.C. Cir. 1981) ("The Supreme Court has recognized that the public interest in enforcement of the immigration laws is significant."). The public interest lies in DHS's ability to enforce U.S. immigration laws.

### C. The Broad Variety of Relief that Plaintiff Seeks by *Ex Parte* TRO Application Is Extremely Excessive, Unjustified, and Far Exceeds the Relief Requested or Obtainable by Plaintiff's Actual Complaint

Plaintiff fails to establish entitlement to the extraordinarily overbroad mandatory

13

1    injunctive relief that they request by TRO application at the very outset of this case,

2    which would grant Plaintiff all the relief they ultimately seek by the Complaint and

3    much more. *Marlyn Nutraceuticals v. Mucos Pharma GmbH & Co.,* 571 F.3d 873, 878

4    (9th Cir. 2009); *see also Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981) ("[I]t is

5    generally inappropriate for a federal court at the preliminary-injunction stage to give a

6    final judgment on the merits").

7        Plaintiff's *ex parte* application does not just seek to order Plaintiff's SEVIS record

8    temporarily restored—akin to the relief that Judge Valenzuela recently ordered by TRO

9    issued in the *Zhou* case. Judge Valenzuela ordered as follows: "The Government's

10   decision to terminate Plaintiff's F-1 student status in SEVIS is hereby set aside pending

11   further order from the Court. The Government is enjoined from terminating Plaintiff's F-

12   1 status in SEVIS pending further order from the Court." *Zhou v. Lyons*, No. 2:25-cv-

13   02994-CV-SK, Apr. 15, 2025 order (found at Tolchin Decl., Ex. C, Page ID #:209).

14       That is not what Plaintiff now asks this Court for, however. Nor does Plaintiff's *ex

15   parte* application seek relief that would be consistent with what Plaintiff's Complaint

16   requests as their ultimate relief in this lawsuit—vacating the termination of Plaintiff's

17   SEVIS status and requiring the SEVIS record restored. *See* Compl., pp. 14-15.

18       Instead, Plaintiff's *ex parte* application asks the Court to issue, via a TRO, a

19   sensationally overbroad range of relief that Plaintiff would not be entitled to even if they

20   ultimately prevailed in this lawsuit. *See* Plaintiff's proposed order (Dkt. 21-1).

21       Specifically, Plaintiff seeks a TRO that does not just restore the SEVIS record

22   temporarily (like Judge Valenzuela's order), but rather purports to vaguely prohibit "any

23   legal effect" of the termination, including inapplicable issues like Plaintiff "continuing in

24   their studies." Further, Plaintiff vaguely references to ordering that the termination not

25   have "any effect on Plaintiff's alleged removability," but does not explain what that

26   consists of. There are strict jurisdictional limits on judicial review of removability

27   proceedings. Plaintiff cannot ask for abstract and vague injunctive relief that would

28   potentially interfere with such potential future proceedings.

14

Plaintiff similarly asks the Court to issue a TRO order providing that "Defendants are prohibited from directly or indirectly, by any means whatsoever, implementing, enforcing, or otherwise taking action as a result of their decision to terminate Plaintiff's SEVIS record." *See* Dkt. 21-1, ¶ 2. This language is far too broad and indeterminate even if the Court were to agree that the SEVIS record should be restored. For example, read literally this would preclude the Defendants from restoring Plaintiff's SEVIS record, since that restoration would be action taken "as a result of" the prior decision to terminate the record. Likewise, for the Defendants to file pleadings in a lawsuit could be claimed to be such prohibited "action." Requesting restoration of the SEVIS record is one thing, but vaguely precluding any conceivable action relating to the termination is hugely overbroad, and completely untethered to the claims pled in Plaintiff's Complaint.

Perhaps most egregiously, Plaintiff requests that the TRO provide that "Defendants are enjoined from arresting and detaining Plaintiff or transferring Plaintiff outside the jurisdiction of this District." *See* Dkt. 21-1, ¶ 5. The request is unrelated to SEVIS, nor limited to it. Plaintiff here appears to be likening themself to the completely different line of cases in which students have been arrested, by State Department action, for speaking about foreign policy issues. But Plaintiff has not sued the State Department. Plaintiff disavows speaking about political issues. This extraordinary relief would bar immigration detention, on any ground, for the unidentified Plaintiff. There is neither any basis for such an order nor any jurisdiction for it. In aggravation, Plaintiff's Complaint disavows challenging the revocation of their visa. He does not contest whether he could be removed on that basis, pursuant to normal removal process. In seeking for the District Court to bar any arrest or detention—in falsely analogizing themselves to the foreign policy political speech cases—Plaintiff seeks by TRO what they could not get even if they ultimately prevailed on their Complaint's claims. That is indefensible.

Moreover, even if Plaintiff is served with an NTA, they will then have the normal protections attendant to that process. The basis for such a potential NTA is speculative at this juncture, particularly since the specifics of Plaintiff's situation are unknown, given

their anonymous status. But if an NTA is issued because the State Department has revoked Plaintiff's visa, or any other conceivable basis, Plaintiff could then oppose detention, and seek bail, just as with any other removal proceedings. There is no basis for issuing Plaintiff a special exemption from immigration law *now*, particularly in a case where the Department of State is not a defendant.

Plaintiff's reliance on a TRO issued in *Chung v. Trump*, No. 25-cv-2412 (S.D.N.Y. Marc. 25, 2025) is completely inapposite. In that case, an administrative warrant for plaintiff's arrest had been issued based on alleged foreign policy harm. *See Chung v. Trump*, No. 25-cv-2412 at Dkt. 8 at 7 (plaintiff's memorandum describing arrest warrant). In contrast, Plaintiff has offered no evidence that Defendants seek to arrest and detain Plaintiff, nor that the foreign policy harm statute is at issue here.

Simply put, Plaintiff's case here is much weaker than the plaintiff's case in *Zhou v. Lyons*, No. 2:25-cv-02994-CV-SK. To the extent any TRO relief were applicable, it should be consistent with, or narrower than, the limited relief that Judge Valenzuela ordered in *Zhou*—rather than falsely analogized to inapposite cases.

### D.    Plaintiff Has Not Satisfied Their Burden to Proceed Anonymously

Plaintiff has not satisfied their burden to proceed anonymously, so as to keep the Defendants and the public in the dark about the veracity of their allegations and the facts bearing on their claims. The public's interest in open courts, and the government's need for information to defend itself, greatly outweighs any baseless concerns of retaliation premised on the unrelated and inapposite news articles that Plaintiff cites. The mere fact of filing an immigration lawsuit is not justification for the extraordinary remedy of depriving the Defendants and the public of knowing who the Plaintiff even is.

As an initial matter, Plaintiff's personally identifiable information in this immigration case is already protected from public disclosure by Fed. R. Civ. P. 5.2(c) and C.D. Cal. L.R. 5.2-1. Moreover, public access to the docket in this immigration case is already restricted. Further restriction is not required.

Indeed, as noted above, essentially all of the other many SEVIS cases have

16

proceeded with named plaintiffs, not with anonymous plaintiffs. There is no evidence of retaliation, nor any conceivable reason why there would be. Proceeding with secret anonymous accusers is not warranted or justifiable in such basic immigration cases.

Fed. R. Civ. P. 10(a) states that "[t]he title of the complaint must name all the parties." Additionally, the Central District's Local Rules require parties to list, on the first page of all documents, the "names of the parties." L.R. 11-3.8(d). This rule embodies the presumption of openness in judicial proceedings. *See Gannett Co. v. DePasquale*, 443 U.S. 368, 386 n.15 (1979). The use of a fictitious name in litigation "runs afoul of the public's common law right of access to judicial proceedings." *Does I thru XXIII v. Advanced Textile Corp.*, 214 F.3d 1058, 1067 (9th Cir. 2000).

In the Ninth Circuit, "the common law rights of access to the courts and judicial records are not taken lightly." *Kamakana v. City of Honolulu*, 447 F.3d 1172, 1178 (9th Cir. 2006) (cleaned up). Thus, parties may only use pseudonyms in the "unusual case," when "the party's need for anonymity outweighs prejudice to the opposing party and the public's interest in knowing the party's identity." *Advanced Textile*, 214 F.3d at 1067-68. *See Doe v. Pasadena Unified Sch. Dist.*, 2018 WL 6137586, at *2 (C.D. Cal. Feb. 20, 2018) (ordering plaintiffs to show cause in writing why the complaint should not be dismissed for failure to identify the Doe plaintiff).

Where, as here, the use of a pseudonym is sought to ostensibly protect the complainant from retaliation, the district court is to determine the need for anonymity under the following factors: (1) the severity of the threatened harm, (2) the reasonableness of the anonymous party's fears; (3) the anonymous party's vulnerability to such retaliation; (4) the prejudice to the opposing party, and (5) the public interest. *Id.* at 1068; *see also Doe v. Kamehameha Sch./Bernice Pauahi Bishop Est.*, 596 F.3d 1036, 1042 (9th Cir. 2010). The Court has discretion to permit anonymity only if "the party's need for anonymity outweighs prejudice to the opposing party and the public's interest in knowing the party's identity." *Id.* Thus, the Court should "determine the precise prejudice at each stage of the proceedings to the opposing party, and whether

proceedings may be structured so as to mitigate that prejudice." *Id.*

As their basis for contending they face a risk of unlawful retaliation here to the point it requires the extraordinary remedy of proceeding pseudonymously, Plaintiff largely relies on news articles concerning specialized arrests and detentions based on Department of State Decisions relating to activist student political activity. But Plaintiff simultaneously alleges that Plaintiff is not actually involved in any similar political activity. Doe Decl. ¶ 6. And Plaintiff has not sued the Department of State. Nor has Plaintiff been issued an arrest warrant like those students were. Moreover, the news articles that Plaintiff relies have no reference to SEVIS record termination – the issue giving rise to Plaintiff's complaint. App. at 10-13, fn. 3-13. While Plaintiff claims that these news articles have caused Plaintiff to experience a generalized fear of retaliation by the federal government, Plaintiff has shown no connection between the legal claims and facts at issue in those articles and the facts of this case. *Id*.

The prejudice to the Defendants in not knowing the particular circumstances over which they are being sued in connection with an emergency injunction hearing is serious. It is impossible to tell whether the description of Plaintiff's criminal history is correct, since Plaintiff has only submitted an anonymous declaration. Yet Plaintiff asks the Court to issue extraordinary injunctive relief against the Defendants on the basis of such conclusory assertions made by an anonymous declarant—regardless of the actual facts of Plaintiff's circumstances. That is inappropriate.

Requiring the Defendants to defend legal claims against an anonymous and hidden accuser is an extreme measure that is not justified here, and which has neither been used nor been found necessary in the many other SEVIS termination cases brought by numerous other counsel around the country. Furthermore, the general public has an interest in knowing the identity of litigants. Accordingly, the Court should deny the request to proceed anonymously.

For the same reasons, Plaintiff's request for an unspecified protective order restricting the sharing of information about Plaintiff's identity and "personal

information" should be denied. Plaintiff's proposed order [Dkt. 21-1, ¶ 2] suggests that after their preliminary relief is granted, they may then identify Plaintiff's identity to Defendant's counsel, subject to certain vague limitations, solely for purposes of litigation. This kind of specialized limitation has not been applied in the other SEVIS cases, and there is no need whatsoever for it here.

Plaintiff claims that "the details of Plaintiff's specific situation are of limited relevance." App. 21. That is not true. According to Plaintiff's complaint, it was arbitrary and capricious for ICE to terminate Plaintiff's SEVIS record because of Plaintiff's criminal history—Plaintiff contends that ICE, looking at the criminal history in question, could not have acted reasonably in terminating his SEVIS status. *See* Compl., ¶ 42. Plaintiff does not apparently argue that *no criminal history* could ever justify SEVIS termination. Rather Plaintiff insists that their own criminal history is inherently insufficient to warrant SEVIS termination, because it is—according to Plaintiff's anonymous declaration—so minor. But an APA claim alleging "arbitrary and capricious" action by a federal agency is decided based upon the actual record before the agency. It is not based on the Plaintiff's own after-the-fact averments about why their criminal record is putatively not serious.

Moreover, the "sample" protective orders attached to the Tolchin Declaration patently support Defendants' position, not Plaintiff's request. *See* Tolchin Decl. Ex. B-C. The plaintiffs who were seeking relief in both cases were expressly named in the case caption of the complaint that initiated those lawsuits. *Id*. Specifically, *Osny Sort-Vasquez-Kidd* was the named plaintiff in the first case, and *Ernesto Torres* was the named plaintiff in the second case. *Id.* Contrary to the suggestions of Plaintiff's counsel, their pursuit of anonymity here is completely inconsistent with normal practice.

In any event, the government's need for information to defend itself, and the public's need for basic information about civil lawsuits, greatly outweighs Plaintiff's asserted fear of retaliation. Accordingly, the Court should deny Plaintiff's request to issue an order with protective-order type provisions extending beyond the protection

19

already provided by Fed. R. Civ. P. 5.2(c) and Local Rule 5.2-1.

### E.    A Bond Is Required Under Fed. R. Civ. P. 65(c)

If the Court decides to grant relief, it should order a bond pursuant to Fed. R. Civ. P. 65(c), which states "The court may issue a preliminary injunction or a temporary restraining order *only if the movant gives security* in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c) (emphasis added). Here, because Plaintiff admits they have no valid visa (Compl. ¶ 6), the amount of any bond should be akin to an appearance bond.

## V.    CONCLUSION

The Court should deny Plaintiff's *ex parte* Application.


Dated:  April 24, 2025                         Respectfully submitted,

                                               BILAL A. ESSAYLI
                                               United States Attorney
                                               DAVID M. HARRIS
                                               Assistant United States Attorney
                                               Chief, Civil Division
                                               JOANNE S. OSINOFF
                                               Assistant United States Attorney
                                               Chief, Complex and Defensive Litigation Section


                                                 */s/ Paul (Bart) Green*
                                               PAUL (BART) GREEN
                                               ALEXANDER L. FARRELL
                                               Assistant United States Attorneys

                                               Attorneys for Defendants

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

<u>Certificate of Compliance</u>

The undersigned, counsel of record for the Defendants, certifies that this Opposition Brief is 6,942, which complies with the page limit set in the Court's Standing Order.

Dated:  April 24, 2025                          */s/ Paul (Bart) Green*
                                                PAUL (BART) GREEN

21